UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW SMITH, ANDREW LAPORTE,
JASON LOWE, CRAIG POTTER, and
THOMAS SPRADER, individually and on
behalf of a class of similarly situated enrolled
persons, JOHN MAHER and ELIZABETH
SPAFFORD, individually and on behalf of a
class of similarly situated graduates, and
DAVID AYOTTE, MICHAEL CHUNN,
JASON COLTER, LORNE COUCH,
ALEX FERGUSON, JAMES FRANS,
AMY GAMBLE, JAMES MARSHALL,
DENNIS PARKER, DAVID RHEAD,
ALDIN SABANOVSKI, BRUCE VANG,
MEHMED VOJNIKOVIC, NATHAN WADELL
and SENAD ZUKIC, individually,

       Case No. 2:10-CV-11490

    Plaintiffs,

       Honorable Victoria A. Roberts

vs.

       Magistrate Judge R. Steven Whalen

COMPUTERTRAINING.COM, INC,
COMPUTERTRAINING.EDU, LLC
(f/k/a COMPUTERTRAINING.COM, LLC),
and CTCI CORP,

    Defendants.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

**I.    INTRODUCTION**

On June 16, 2010 Plaintiffs filed a Motion for Class Certification and for

Appointment of Class Counsel (Doc. #21).  Defaults were entered against Defendants

1

ComputerTraining.com, Inc., ComputerTraining.edu, LLC (f/k/a ComputerTraining.com, LLC), and CTCI Corp. for failure to appear and defend (Doc. #18-20). These defendants have all defaulted, and do not oppose this Motion.

Plaintiffs' motion is **GRANTED**.

## II. BACKGROUND

Plaintiffs filed this action against Defendants after the abrupt closing of the ComputerTraining schools on December 31, 2009. (Second Amended Complaint, Doc. #26 [Sec. Am. Compl.]). The Defendants operated twenty-one ComputerTraining schools in fourteen states, including two in Michigan. These schools were a for-profit business, and sold six-month educational programs in information technology, which included career placement services for graduates. Defendants appear to have conducted uniform sales practices, and appear to have used similar, if not identical, forms and contracts.

Plaintiffs are students who were enrolled in the Defendants' schools when they closed, or are graduates of the schools. For purposes of this litigation, Plaintiffs have separated into two distinct classes, the "Enrolled Class" and the "Graduate Class." The named Plaintiffs for the Enrolled Class are Andrew Smith, Andrew LaPorte, Jason Lowe, Craig Potter, and Thomas Sprader. Plaintiffs define the Enrolled Class as:

> All individuals who were enrolled at ComputerTraining as of December 31, 2009, and all individuals who co-signed or otherwise guaranteed or became liable for a loan to pay the ComputerTraining tuition for any such individual.

Plaintiffs' Brief in Support of Motion for Class Certification and for Appointment of Class Counsel, pg. 9 [Pl. Br.].

In the Second Amended Complaint, the putative Enrolled Class asserts eleven counts against these defendants on behalf of themselves and all others similarly situated. The counts are based on (1) negligence, (2) breach of fiduciary duty, (3) negligent misrepresentation, (4) innocent misrepresentation, (5) promissory estoppel, (6) unjust enrichment/breach of quasi-contract, (7) equitable estoppel, (8) breach of contract, (9) fraud, (10) civil conspiracy, and (11) concert of action. Generally speaking, Enrolled Plaintiffs allege that Defendants are contractually or otherwise bound to refund tuition costs to members of the Enrolled Class. The Enrolled Class also asserts that they are entitled to compensation for the ongoing career placement services that the Defendants represented were included in the program. Plaintiffs estimate that the Enrolled Class includes between 1000 and 2000 members.

The named Plaintiffs for the Graduate Class are John Maher and Elizabeth Spafford. Plaintiffs define the Graduate Class as:

> All individuals who completed a training program at ComputerTraining prior to December 31, 2009, and all individuals who co-signed or otherwise guaranteed or became liable for a loan to pay the ComputerTraining tuition for any such individual.

Pl. Br. 10.

The Graduate Plaintiffs have the same eleven counts against the defendants as the Enrolled Plaintiffs do, as listed above. The Graduate Class says that its members are entitled to compensation for the ongoing career placement services that the Defendants represented were included in the program. Plaintiffs estimate that the Graduate Class includes between 10,000 and 20,000 members.

**III.    STANDARD OF REVIEW**

Plaintiffs' Motion for Class Certification and for Appointment of Class Counsel is filed pursuant to Fed. R. Civ. P. 23. As the party seeking class certification, Plaintiffs have the burden to show that the requirements of Rule 23 have been met. *See Anchem Products, Inc., v. Windsor*, 521 U.S. 591, 614 (1997). A "district court retains broad discretion in determining whether an action should be certified as a class action, and its decision, based upon the particular facts of the case, should not be overturned absent a showing of abuse of discretion." *Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188, 1197 (6th Cir. 1988).

In determining a motion for class certification, a court does not assess the merits of the plaintiffs' underlying claims. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177 (1974). The substantive allegations made in the complaint should be taken as true, and the Court should assume that cognizable claims are stated. *In re: Cardizem CD Antitrust Litigation,* 200 F.R.D. 326, 334 (E.D. Mich. 2001)(citing *Eisen,* 417 U.S. at 178). However, the Court is required to "conduct a 'rigorous analysis' into whether the prerequisites of Rule 23 are met before certifying a class." *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1078-1079 (6th Cir. 1996)(citing *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982)). But if the Court is in doubt "as to whether to certify a class action, it should err in favor of allowing a class." *Little Caesar Enter., Inc. v. Smith*, 172 F.R.D. 236, 241 (E.D. Mich. 1997).

**IV.    APPLICABLE LAW AND ANALYSIS**

Under Rule 23(c), "[a]n order that certifies a class action must define the class

and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B).  Although all of the Defendants named in this motion have defaulted in the judgment, "(r)elief cannot be granted to a class before an order has been entered determining that class treatment is proper." *Davis v. Romney*, 490 F.2d 1360, 1366 (3rd Cir 1974); *see also Davis v. Hutchins*, 321 F.3d 641, 648 (7th Cir. 2003); *Partington v. American Int'l Speciality Lines Ins. Co.,* 443 F.3d 334, 340 (4th Cir. 2006).

### A. Prerequisites under Rule 23(a)

The prerequisites for certifying an action as a class action under Rule 23(a) are:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation. *See, e.g., Beattie v. CenturyTel, Inc.,* 234 F.R.D. 160, 167 (E.D. Mich. 2006).

### 1. Numerosity

The first section of Rule 23(a) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  This requirement "is met when plaintiffs demonstrate that the number of potential class members is large, even if

5

plaintiffs do not know the exact figure." *Beattie,* 234 F.R.D. at 167-168 (citing *In re Consumers Power Company Security Litigation,* 105 F.R.D. 583, 601 (E.D. Mich 1985)).

Classes far smaller than the 1,000- and 10,000-member classes proposed here have met the numerosity requirement in the Sixth Circuit. *See Afro American Patrolmen's League v. Duck,* 503 F.2d 294 (6th Cir. 1974)(certifying a class of 35 members) *and Klender v. U.S.*, 218 F.R.D. 161 (E.D. Mich. 2001)(certifying a class of 151 members). Plaintiffs base their estimated size of the Enrolled Class on the figure of 973 from an email written by the ComputerTraining schools' former owner, which appears to refer to the number of students enrolled at the time of closing. (Pl. Br., Ex. 7). The final estimate of 1000-2000 members was reached by accounting for the potential co-signors of those 973 students' educational loans. (Pl. Br. 7-8). Plaintiffs base their estimate for the Graduate Class on ComputerTraining materials produced in 2007, which state that the schools have more than 7,000 graduates in the IT industry. (Pl. Br. 8). The final estimate of 10,000-20,000 members was reached by accounting for students who graduated between 2007 and the schools' closing, as well as co-signors of those graduates' educational loans. *Id.* Even assuming the lowest side of Plaintiffs' estimates, the scope of each class they propose is clearly so numerous that joinder of all members would be impracticable.

For these reasons, the Court finds that the numerosity requirement is met for both the Enrolled Class and the Graduate Class.

**2.     Commonality**

The second section of Rule 23(a) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Rule 23 simply requires *a* common question of law or fact." *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 884 (6th Cir. 1997)(emphasis in original). Additionally, "(w)hen the legality of the defendant's standardized conduct is at issue, the commonality factor is normally met." *Gilkey v. Central Clearings Co.*, 202 F.R.D. 515, 521 (E.D. Mich. 2001).

The claims of both classes center around Defendants' standardized conduct; they arise out of the operation and closing of the Defendants' schools. Plaintiffs allege that the schools were uniformly and centrally operated, and that all of the schools closed at the same time and for the same reasons. (Pl. Br. 3-4; Sec. Am. Compl. ¶¶ 90-104, 119-137). Thus, it appears that there are many issues of law and fact common to members of the Enrolled Class and the Graduate Class. Although the Defendants have all defaulted on the issues surrounding liability, common issues of law and fact are pertinent to the determination of damages.

Issues of law common to all members of the Enrolled Class include the determination of damages based on Defendants' liability to refund tuition costs. This central claim is based on a provision in the various Enrollment Agreements, and in the standard course catalogs.[1] Issues of law common to all members of both the Enrolled

---

[1] The relevant provision of the Enrollment Agreement reads: "(i)f Computertraining closes prior to the completion of your enrolled program, Computertraining shall refund to the Student, if currently enrolled, monies paid by the Student for tuition and fees, or monies for which the Student is liable for tuition and fees." (Pl. Br., Ex. 3). The relevant provision of the course catalog reads: "If ComputerTraining closes or discontinues the course, it shall refund to each currently enrolled student monies paid by the student for tuition and fees." (Sec. Am. Compl. ¶104).

7

Class and the Graduate Class include the determination of damages based on Defendants' liability to provide ongoing career placement services through specific representations.

For these reasons, the Court finds that the commonality requirement is met for both the Enrolled Class and the Graduate Class.

### 3. Typicality

The third section of Rule 23(c) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A district court must find that a "sufficient relationship exists between the injury to the named plaintiff and conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Stout v. J.D. Byrider,* 228 F.3d 709, 717 (6th Cir. 2000)(citations omitted). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory." *In re American Medical Systems, Inc.,* 75 F.3d at 1082 (citing 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,* § 3-13, at 3-76 (3d ed. 1992)). A class action is not impermissible simply because "questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved." *Gilkey,* 202 F.R.D. at 522.

The proposed representatives of the Enrolled Class assert claims that are typical of the class because they all arise from the same course of conduct. The Enrolled Class's claims arise from the Defendants' practices concerning the Enrollment Agreements, and from the closing of the schools. Since the various Enrollment

Agreements and course catalogs are substantively uniform, the fact that potential class members enrolled at different campuses does not affect typicality.

The proposed representatives of the Graduate Class assert claims that are typical of the class because they all arise from the same course of conduct. The Graduate Class's claims arise from the Defendant's central operation of the schools, the uniform sales practices, and the representations made through these operations and practices. Since these practices and representations were uniform, the fact that potential class members graduated from different campuses does not affect typicality. The Graduate Class's claims also arise out of the same event: the closing of the schools. Again, all of the schools closed at the same time and for the same reasons.

For these reasons, the Court finds that the typicality requirement is met for both the Enrolled Class and the Graduate Class.

### 4. Adequacy of Representation

The last section of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement was explained by the Supreme Court in *Anchem Products, Inc., v. Windsor*:

> The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members.

*Anchem Products, Inc.,* 521 U.S. at 625-626.

Rule 23(a)(4) also involves finding that "the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re American Medical Systems, Inc.,* 75 F.3d at 1083.

Named Enrolled Plaintiffs and members of the Enrolled Class allegedly suffered the same two main injuries. All claim they have paid or become liable to Defendants for tuition. They also claim they were promised career placement services as part of the program for which they paid tuition or became liable. There is no indication of a conflict of interest between the named Enrolled Plaintiffs and the members of the Enrolled Class.

Named Graduate Plaintiffs and members of the Graduate Class allegedly suffered the same main injury: all claim they were promised career placement services as part of a program for which they paid tuition or became liable. There is no indication of a conflict of interest between the named Graduate Plaintiffs and the members of the Graduate Class.

Based on information in the affidavits of Dean Googasian and Thomas Howlett, submitted as exhibits to their Motion, this Court finds no reason to believe that the representatives for both classes would not vigorously prosecute the interests of the class. Also based on these affidavits, this Court finds no reason to believe that Dean Googasian and Thomas Howlett are not qualified counsel within the meaning of Rule 23(a)(4).

For these reasons, the Court finds that the adequacy of representation requirement is met for both the Enrolled Class and the Graduate Class.

The Court concludes, therefore, that all requirements of Rule 23(a) have been satisfied.

### B.     Type of Class under Rule 23(b)

Once the prerequisites of Rule 23(a) are satisfied, a class action must also fulfill the requirements of at least one of the three types set out in Rule 23(b). *See, e.g., Ball v. Union Carbide Corp.,* 385 F.3d 713, 728 n.12 (6th Cir. 2004). The relevant type of class action is defined as follows:

> (3)   the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A)   the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B)   the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D)   the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(emphasis added).

This type of class action "was designed not solely as a means for assuring legal assistance in the vindication of small claims but, rather, to achieve the economies of time, effort, and expense." *In re Am. Med. Sys., Inc.* 75 F.3d at 1084 (internal quotes omitted); *see also* Adv.Comm.Note, 39 F.R.D. 69, 102-103 (1966). The interests of the members of a class must be connected closely because all members of a Rule 23(b)(3) class who do not opt out will be bound by the judgment. Fed. R. Civ. P. 23(c)(3)(b); *see also* 7AA Wright, Miller, & Kane, *Federal Practice and Procedure* §1778 (3d ed. 2005). The analysis for Rule 23(b)(3) is usually broken down into two inquiries: predominance

and superiority. *See, e.g.*, *Beattie v. Century Tel, Inc.,* 511 F.3d 554, 563-567 (6th Cir. 2007).

### 1. Predominance

In assessing whether questions of law or fact common to class members predominate over any questions affecting only individual members, the Sixth Circuit recently issued the following guidance:

> [T]he commonality requirement is satisfied if there is a single factual or legal question common to the entire class. The predominance requirement is met if this common question is at the heart of litigation.

*Powers v. Hamilton County Public Defender Commission,* 501 F.3d 592, 619 (6th Cir. 2007).

A court should also look to "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc.,* 521 U.S. at 623 (citing 7A Wright, Miller, & Kane, *Federal Practice and Procedure,* §1753 (2d ed. 1986)).[2] In explaining the purpose of the predominance requirement, the Advisory Committee gave the example of "a fraud perpetrated on numerous persons by use of similar misrepresentations." Adv.Comm.Note, 39 F.R.D. 69, 103 (1966). The Advisory Committee notes that this example holds true even if individualized determinations of damages are found necessary after a determination of liability. *Id.*

There is no indication of any questions of law or fact affecting only individual members of the Enrolled Class that rival the predominance of questions common to the

---

[2]In *Anchem Products, Inc., v. Windsor* class members "were exposed to different asbestos containing products, for different amounts of time, in different ways, and over different periods." *Id.* at 624. The Supreme Court held that the predominance standard was not met based on "the greater number of questions peculiar to the several categories of class members, and to individuals within each category, and the significance of those uncommon questions." *Id.*

class. The overriding question affecting the Enrolled Class is what damages Defendants caused through the standard Enrollment Agreements and through the events surrounding the closing of the school.

The way in which Defendants represented the program, including their representations concerning continuing career placement services, appears to be "a fraud perpetrated on numerous persons by use of similar misrepresentations." *Id.* The Sixth Circuit has approved class certification in such cases of systematic misrepresentation. *Bittenger*, 123 F.3d at 884 (certifying a class of retirees despite the fact that the company's representations concerning their retirement benefits were not uniformly communicated to all class members).

There is no indication of any questions of law or fact affecting only individual members of the Graduate Class that rival the predominance of questions common to the class. The overriding question affecting the Graduate Class (and the Enrolled Class), is what damages Defendants caused through their representations and through events surrounding the closing of the schools.

Furthermore, there is no indication that any of the considerations listed in Rule 23(b)(3)(A)-(D) are implicated in this situation. As stated and supported in Plaintiffs' brief, none of the proposed members of either class has an interest, expressed or otherwise, in individually controlling the prosecution or defense of separate actions. (Pl. Br. 18). Nor does it seem that any litigation has already begun by or against members of either class. Since two of the defendants' schools were located in Michigan, this appears to be as desirable a forum as any. Counsel seems cognizant of the likely difficulties in managing a class action and capable of dealing with them. (Pl. Br. 18-19).

13

Additionally, the normal difficulties of managing a class action have been greatly reduced, since Defendants defaulted on the judgment and only the consideration of damages remains.

The Court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members.

### 2. Superiority

The requirement that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy" is relatively straightforward. Fed. R. Civ. P. 23(b)(3). As the phrase "fairly and efficiently" suggests, this is "an area in which the courts have used considerable discretion of a pragmatic nature." *J.D. Woodhull, Inc., v. Addressograph-Multigraph Corp.,* 62 F.R.D. 58, 61 (S.D. Ohio 1974). As noted above, the purpose of Rule 23(b)(3) actions is "to achieve the economies of time, effort, and expense." *In re American Medical Systems, Inc.,* 75 F.3d at 1084 (internal quotes omitted); *see also* Adv.Comm.Note, 39 F.R.D. 69, 102-103 (1966). Considerations include "avoiding a multiplicity of actions and avoiding delay in securing any legitimate relief." *Buyers League v. F & F Inv.,* 28 F.R.D. 7, 13 (N.D.Ill. 1969)(cited in 6A Federal Procedure, Lawyers Edition §12:231).

In the case of *In re Nassau County Strip Search Cases,* the Second Circuit found the fact that the defendants had already conceded to liability compelling to the determination of superiority. *In re Nassau County Strip Search Cases*, 461 F.3d 219, 230 (2nd Cir. 2006). That case is analogous to the one here, where Defendants have all defaulted. Because the only remaining consideration is damages, it is difficult to imagine that any potential class member would rather pursue his or her claim

individually in any other manner or forum. As noted in the discussion of predominance, there is no indication that any of the considerations listed in Rule 23(b)(3)(A)-(D) are implicated in this situation.

The Court finds that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The Court concludes, therefore, that class certification under Rule 23(b)(3) is appropriate.

### C. Appointment of Class Counsel

Under Rule 23(g), "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). A court must consider the following factors:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

The work that counsel have done for this action, their previous experience, and their knowledge of applicable law, demonstrate that they are capable of representing both classes. (Pl. Br. 18-19, Ex. 9 & 10 [affidavits of Dean Googasian and Thomas Howlett]). The resources they have devoted, as well as the work they have already done, also indicates that they are committed to and invested in this case. *Id.*

The Court is satisfied that these attorneys fulfill the requirements of Rule 23(g).

### V. CONCLUSION

15

Plaintiffs satisfy all requirements of Federal Rule of Civil Procedure 23(a) and the provisions of Rule 23(b)(3).

Therefore Plaintiff's Motion for Class Certification is **GRANTED**. The determination of class certification is conditional and may be altered or amended prior to a final determination on damages in light of any changes in circumstances that make such action advisable. *See* Fed. R. Civ. P. 23(c)(1).

Pursuant to Federal Rule of Civil Procedure 23(b)(3), the following class is certified as the "Enrolled Class":

> All individuals who were enrolled at ComputerTraining as of December 31, 2009, and all individuals who co-signed or otherwise guaranteed or became liable for a loan to pay the ComputerTraining tuition for any such individual.

Pursuant to Federal Rule of Civil Procedure 23(b)(3), the following class is certified as the "Graduate Class":

> All individuals who completed a training program at ComputerTraining prior to December 31, 2009, and all individuals who co-signed or otherwise guaranteed or became liable for a loan to pay the ComputerTraining tuition for any such individual.

Counsel for the named plaintiffs, namely Dean Googasian and Thomas Howlett, are appointed counsel for each of the designated classes.

At their expense, Plaintiffs must provide appropriate notice to all class members via first-class mail and in conformance with Rule 23 of the Federal Rules of Civil Procedure. The notice must provide putative class members until July 26, 2011 to notify counsel for the parties and the Court, of their intention to opt out of the proposed class. The notice must provide that class members wishing to enter their own

16

appearance in the matter through counsel must do so by that same date.

On or before February 17, 2011, Plaintiffs must forward to the Court a proposed document that will be used to serve notice upon all members of the class. The notice must not be sent until Court approval is given.

**IT IS ORDERED.**

      /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: January 26, 2011