UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW SMITH, ANDREW LAPORTE,
JASON LOWE, CRAIG POTTER, and
THOMAS SPRADER, individually and on
behalf of a class of similarly situated enrolled
persons, JOHN MAHER and ELIZABETH
SPAFFORD, individually and on behalf of a
class of similarly situated graduates, and
DAVID AYOTTE, MICHAEL CHUNN,            Case No. 2:10-CV-11490
JASON COLTER, LORNE COUCH,
ALEX FERGUSON, JAMES FRANS,             Hon. Victoria Roberts
AMY GAMBLE, JAMES MARSHALL,
DENNIS PARKER, DAVID RHEAD,             Magistrate Judge R. Steven Whalen
ALDIN SABANOVSKI, BRUCE VANG,
MEHMED VOJNIKOVIC, NATHAN
WADDELL, and SENAD ZUKIC, individually,

            Plaintiffs,

vs.

COMPUTERTRAINING.COM INC,
COMPUTERTRAINING.EDU, LLC
(f/k/a COMPUTERTRAINING.COM, LLC),
 CTCI CORP and SALLIE MAE, INC.,

            Defendants,
_____

**ORDER GRANTING DEFENDANT SALLIE MAE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION**

## I. INTRODUCTION

On September 8, 2010, Defendant Sallie Mae filed a Motion to Dismiss Plaintiffs'

Complaint as to Sallie Mae, or in the alternative, to stay proceedings before this Court,

and compel Plaintiffs to submit their claims to arbitration. (Doc. #33).  Oral argument

was heard on January 6, 2011.

1

For reasons explained below, the Court finds:

1.      Utah law governs the initial inquiry: whether the parties agreed to arbitrate.

2.      Plaintiffs fail to show that the ComputerTraining Defendants' default on allegations of unconscionability can be imputed to Sallie Mae through the FTC Holder Rule.

3.      Plaintiffs fail to properly plead that the Class Action Waiver, or the Arbitration Agreement as a whole, are unconscionable, by not raising the issue until their Response to this Motion.

4.      Any dispute involving the validity, enforceability or scope of the Arbitration Agreements has been delegated to the arbitration process.

5.      The unavailability of the arbitration forum designated in the Arbitration Agreement does not preclude arbitration in the alternate forum designated in the Arbitration Agreement, given the plain meaning of the Arbitration Agreement terms.

6.      Plaintiffs assert no statutory claims, so the Court need not, and cannot, consider Congress's intent that any claims should be nonarbitrable.

7.      Even if the Plaintiffs' claims under the FTC Holder Rule could be considered federal statutory claims for the purpose of this analysis, there is no indication that the FTC intended claims brought under the FTC Holder Rule to be nonarbitrable.

8.      All claims between Plaintiffs and Sallie Mae must be dismissed and submitted for arbitration.

The Court **GRANTS** Defendant's Motion to Dismiss.

## II. BACKGROUND

Plaintiffs filed this action in April 2010, against Defendants ComputerTraining.com, Inc., ComputerTraining.edu, LLC (f/k/a ComputerTraining.com, LLC) and CTCI Corp. (ComputerTraining Defendants), after the abrupt closing of the ComputerTraining schools on December 31, 2009. (Doc. #1). Defaults were entered against all of the ComputerTraining Defendants in May 2010, for failure to appear and defend. (Doc. #18-20). Plaintiffs added Sallie Mae as a defendant in August 2010 through the Second Amended Class Action Complaint and Jury Demand. (Doc. #26).

Plaintiffs entered into Enrollment Agreements with the ComputerTraining Defendants. (Doc. #21, Ex. 4). Sallie Mae was not a party to those Agreements.

Plaintiffs are students who were enrolled in the ComputerTraining Defendants' schools when they closed, or are graduates of the schools. This Court certified two classes of Plaintiffs for the determination of damages between the ComputerTraining Defendants and Plaintiffs.

Generally, Plaintiffs seek a refund of their tuition and compensation for ongoing career placement services. Plaintiffs assert eleven counts against the ComputerTraining Defendants based on (1) negligence, (2) breach of fiduciary duty, (3) negligent misrepresentation, (4) innocent misrepresentation, (5) promissory estoppel, (6) unjust enrichment/breach of quasi-contract, (7) equitable estoppel, (8) breach of contract, (9) fraud, (10) civil conspiracy, and (11) concert of action. The Court has not certified a class in Plaintiffs' claims against Defendant Sallie Mae.

Plaintiffs bring all eleven of these counts against Sallie Mae through the Federal Trade Commission Holder Rule (FTC Holder Rule) Notice in certain Educational Loan

Program Promissory Notes (Promissory Notes). (Doc. #33, Ex. A-2).  The Promissory
Notes are the only written agreements directly between Plaintiffs and Sallie Mae. The
ComputerTraining Defendants are not parties to the Promissory Notes.  Under these
Promissory Notes, Sallie Mae provided some of the Plaintiffs, and allegedly thousands
of other ComputerTraining students, with loans to fund their education at the
ComputerTraining schools.

Where a consumer takes out a loan to purchase goods or services, the FTC
Holder Rule Notice must be incorporated into the loan contract. 16 C.F.R. § 433.2.  The
FTC Holder Rule Notice allows consumers to assert any claims or defenses against the
creditor that they have against the seller.  For purposes here, since Plaintiffs have
claims against the ComputerTraining Defendants (seller), the conduit through which
Sallie Mae (creditor) made loans to Plaintiffs, the FTC Holder Rule Notice in the
Promissory Notes is the vehicle through which Plaintiffs can bring the same claims they
have against the ComputerTraining Defendants, against Sallie Mae.

This motion concerns only those Plaintiffs, or those in the classes they seek to
represent, who entered into Promissory Notes with Sallie Mae.  It is alleged that named
Plaintiffs Andrew Smith, Andrew LaPorte, Jason Lowe, John Maher, Elizabeth Spafford,
David Ayotte, Michael Chunn, Jason Colter, Alex Ferguson, Jason Frans, Amy Gamble,
James Marshall, Dennis Parker, Aldin Sabanovski, Bruce Vang, Mehmed Vejnikovic,
Nathan Waddell, and Senad Zukic signed such Promissory Notes.

Defendant Sallie Mae moves to dismiss all claims against it for lack of subject
matter jurisdiction under Rule 12(b)(1). Fed. R. Civ. P. 12(b)(1).  Sallie Mae argues that
this Court does not have jurisdiction over any of the claims between it and Plaintiffs,

4

because the parties agreed to arbitrate all claims.  Sallie Mae claims this is true despite the FTC Holder Rule.

The Promissory Notes between Plaintiffs and Sallie Mae contain an Arbitration Agreement ("Arbitration Agreement"). (Doc. #33, Ex. A-2, §XVII).  Sallie Mae claims that the current dispute falls within the scope of the Arbitration Agreement.  Defendant argues that Utah state contract law governs the Promissory Notes and the Arbitration Agreement language, and that no grounds exist for revoking the Arbitration Agreement under Utah law.

Sallie Mae argues also, that even if the Court is not convinced that the claims fall within the Arbitration Agreement, the parties contracted to have an arbitrator make that decision.  Defendant says that when all of the issues raised in a district court must be submitted to arbitration, the case should be dismissed.  If the Court declines to dismiss the case, Sallie Mae requests that it compel Plaintiffs to arbitrate, and to stay proceedings pending arbitration.

Plaintiffs argue that Michigan law applies, rather than Utah law.  They claim that under Michigan law, the Class Action and Multi-Party Waiver (Class Action Waiver) in the Arbitration Agreement is unconscionable, which renders the entire Agreement invalid.  Plaintiffs also claim that it would be unconscionable for the Court to enforce the Arbitration Agreement because the forum designated in the Arbitration Agreement is no longer available. They argue that the unavailability of the forum under the terms of the Arbitration Agreement, precludes arbitration in any other forum.

Plaintiffs also say that Sallie Mae essentially defaulted on any unconscionability arguments.  Plaintiffs argued in the Second Amended Complaint that the arbitration

5

clause in the Enrollment Agreements (between Plaintiffs and ComputerTraining Defendants) was unconscionable. (Doc. #26, ¶¶ 109-113).  Since the ComputerTraining Defendants defaulted, Plaintiffs make the leap and argue that their allegation that the arbitration clause in the Enrollment Agreements is unconscionable, should be deemed true.  Plaintiffs further argue that the ComputerTraining Defendants' default on the issue of unconscionability should be imputed to Sallie Mae via the FTC Holder Rule.

Defendant Sallie Mae says in its Reply (Doc. #38) that the FTC Holder Rule does not apply to a procedural default.  Sallie Mae contends that class action waivers in consumer credit agreements are explicitly enforceable under Utah law.  Sallie Mae also argues that the unavailability of the designated forum does not preclude arbitration altogether.  Sallie Mae claims that a number of provisions in the Arbitration Agreement demonstrate an overriding intent to arbitrate, even if the first choice is not available.

## III. STANDARD OF REVIEW

Congress enacted the Federal Arbitration Act (the FAA), 9 U.S.C. § 1 *et seq.,* "to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24 (1991).  The FAA expresses a strong public policy favoring arbitration in a broad range of disputes, and provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Thus arbitration clauses "may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability."  *Rent-A-Center, West, Inc., v. Jackson*, 130 S.Ct. 2772, 2777 (2010) (internal quotations and additional citations omitted).  But,

6

if a claim is governed by a valid arbitration agreement, a court must compel arbitration. 9 U.S.C. §§ 3-4.

Federal law creates "a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Highlands Wellmont Health Network, Inc., v. John Deere Health Plan, Inc.,* 350 F.3d 568, 576-77 (6th Cir.2003) (quoting *AT & T Technologies, Inc., v. Communications Workers of America,* 475 U.S. 643, 650 (1986)). "If parties contract to resolve their disputes in arbitration rather than in the courts, a party may not renege on that contract absent the most extreme circumstances." *Stout v. Byrider,* 228 F.3d 709, 715 (6th Cir. 2000).

Although "ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the strong policy favoring arbitrations is implicated." *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 293-94 (2002) (quotations and citations omitted). Arbitration clauses are governed by the consent and intentions of the parties:

> Underscoring the consensual nature of private dispute resolution, we have held that parties are generally free to structure their arbitration agreements as they see fit. For example, we have held that parties may agree to limit the issues they choose to arbitrate…We also think it is clear from our precedents and the contractual nature of arbitration that parties may specify with whom they choose to arbitrate their disputes.

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758, 1774 (2010).

7

The Sixth Circuit articulated four tasks for a court considering a motion to compel arbitration under the FAA:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of the agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout,* 228 F.3d at 714-15.

Federal courts apply state law to determine whether contract defenses may invalidate arbitration agreements.  *See, e.g., Doctor's Association, Inc., v. Casarotto,* 517 U.S. 681, 687 (1996).  However, questions concerning the interpretation and construction of arbitration agreements are governed by federal substantive law.  *See, e.g., Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 25 (1983). The party opposing arbitration has the burden to show that the agreement is not enforceable.  *Green Tree Financial Corp.- Alabama v. Randolph,* 531 U.S. 79, 91-92 (2000).

## IV. APPLICABLE LAW AND ANALYSIS

### A.  The Parties Agreed to Arbitrate

#### 1.  Choice of Law

To determine which state's law governs the Arbitration Agreement in the Promissory Notes, the inquiry begins with Michigan's choice of law rules. *See, e.g., Ruffin-Steinback v. dePasse,* **267 F.3d 457, 463 (6th Cir. 2001) (stating that in a diversity case, a federal court should apply the choice of law rules for the state in which it sits) (citations omitted).  Under Michigan law, a contractual choice of law**

8

**provision is presumed valid unless "the chosen state has no substantial relationship to the parties or the transaction," or the chosen state's law "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state." *Chrysler Corp. v. Skyline Industrial Services, Inc.,*** 448 Mich. 113, 126 (1995) (citations omitted).

The Promissory Notes between Plaintiffs and Sallie Mae contain a choice of law provision:

> **Governing Law: Venue** - I understand that the Lender is located in the state identified on my Disclosure and that this Note will be entered into in that state.  Consequently, the provisions of this Note will be governed by applicable federal laws and the laws of that state to the extent not preempted, without regard to conflict of law rules.

Doc. #33, Ex. A-2, §XIV, ¶2 [bold and underlined type in original].

The second sentence in each Truth in Lending Disclosure for each of the relevant Plaintiffs reads: "Lender refers to SALLIE MAE BANK, located in the state of UT." (Doc. #38, Ex. A, Att. 1 at 1).  Thus the parties contracted to have Utah law govern the Promissory Notes.  Utah has a "substantial relationship" to Defendant Sallie Mae, as Sallie Mae is located in Utah. *Chrysler Corp.,* 488 Mich. at 126.  Utah also has a "substantial relationship" to the transaction; the Promissory Notes were entered into in Utah.  *Id.*

Plaintiffs claim that nothing indicates that Utah law would govern.  They contend that the Promissory Note "mentions no fewer than sixteen different states and makes clear that the relationship depends upon the state where the borrower resides." (Doc. #35 at 16, fn. 13). Plaintiffs cite to Section XI of the Promissory Notes, which appears to provide additional terms for default under state laws for residents of six different states.

(Doc. #33, Ex. A-2, §XI).  Plaintiffs also point to a State Notices section in the

Promissory Notes, which includes notices required for residents of certain states under

the laws of those states. (Doc. #33, Ex. A-2, § XII, ¶ 9).  The State Notices section

prefaces these notices with the following explanation:

> <u>State Notices</u> – I understand that the following notices are required by or
> necessary under state law and that these notices may not describe all of
> the rights that I have under state and federal law.  Unless otherwise
> indicated, each notice applies to borrowers and cosigners who live in the
> indicated state on the date that they signed the application and to
> borrowers and cosigners who are residents of that state.

*Id.* [bold and underlined type in original].

Plaintiffs do not cite to any authority or provide any compelling reason why the Court

should expand the plain meaning of these provisions to hold that the entire Promissory

Note is governed by the law of the state in which each debtor resides, or by Michigan

law.  Plaintiffs also do not cite to any authority or provide any reason that compels the

Court to ignore the plain meaning of the Governing Law provision.

Plaintiffs do not address Michigan choice of law rules or cite to any Michigan

cases on the choice of law issue.  Instead, Plaintiffs claim that "the application of Utah

law was recently rejected in nearly identical circumstances by the Third Circuit in *G.R.*

*Homa v. American Express Co.,* 558 F.3d 225 (3rd Cir. 2009)." (Doc. #35 at 16, fn. 13).

In *G.R. Homa*, the Third Circuit declined to apply Utah law after conducting a New

Jersey choice of law analysis, admittedly similar to Michigan's.  However, the Third

Circuit relied on a specific New Jersey Supreme Court case in "predict[ing] that the

Supreme Court of New Jersey would find that the class-action waiver at issue violates

the fundamental public policy of New Jersey." *Id.* at 228.

10

Plaintiffs do not cite to any authority showing that Michigan has a fundamental policy against class-action waivers.  If anything, Michigan has a strong public policy favoring arbitration. *See, e.g., Rembert v. Ryan's Family Steakhouses, Inc.,* 235 Mich.App. 118, 123 (Mich.App. 1999) (describing the Michigan Arbitration Act, M.C.L. § 600.5001 *et seq.*, as "a strong and unequivocal legislative expression of Michigan's proarbitration public policy").

Plaintiffs also argue that the choice of law is irrelevant "because Utah, like Michigan, recognizes that arbitration clauses can be found unconscionable," citing to *Powell v. Cannon,* 179 P.3d 799 (Utah 1999).  This is simply untrue.  In *Powell*, the Supreme Court of Utah found that it lacked jurisdiction over the appeal, and never reached the substantive issues raised by the parties.  *Id.*

Plaintiffs fail to argue or show that Utah does not have a substantial relationship to the parties or the transactions.  They also fail to argue or show that Michigan has a materially greater interest in the action, or that Utah law violates a fundamental policy interest of Michigan, such that Utah law should not apply.

The Court finds no reason to override the Governing Law provision; Utah law governs the Promissory Notes.

## 2.   Unconscionability and the FTC Holder Rule

Plaintiffs argue that this Court, not an arbitrator, must hear their claim that the Class Action Waiver in the Arbitration Agreement is unconscionable. (Doc. #35 at 8). They cite to a provision in the Arbitration Agreement which stipulates that "'**Claim' does not include any challenge to the validity and effect of the Class Action and Multi-**

11

**Party Waivers, which must be decided by a court.**" (Doc. #33, Ex. A-2, §XVII, ¶ 4

[defining "Claims" that either party may elect to arbitrate; bold type in original]).

Plaintiffs contend that the entire Arbitration Agreement will be void if the Class

Action Waiver is found to be invalid:

1(T)he entire Arbitration Agreement (other than this sentence) shall be null and void with respect to any Claim asserted on a class, representative or multi-party basis if the Class Action and Multi-Party Waivers are held to be invalid.

Doc. #33, Ex. A-2, §XVII, ¶10 [Survival, Severability, Primacy].

The Class Action Waivers are as follows:

**IMPORTANT WAIVERS: If you or I elect to arbitrate a Claim, you and I both waive the right to: (1) have a court or a jury decide the Claim; (2) PARTICIPATE IN A CLASS ACTION IN COURT OR IN ARBITRATION, WHETHER AS A CLASS REPRESENTATIVE, CLASS MEMBER OR OTHERWISE; (3) ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; OR (4) JOIN OR CONSOLIDATE CLAIM(S) WITH CLAIMS INVOLVING ANY OTHER PERSON IN COURT OR IN ARBITRATION.  Other rights are more limited in arbitration than in court or are not available in arbitration. The waivers in subsections (2)-(4) above are called the "Class Action and Multi-Party Waivers." The arbitrator shall have no authority to conduct any arbitration inconsistent with the Class Action and Multi-Party Waivers.**

*Id.* ¶ 2 [capitalization and bold type in original].

Plaintiffs say in their Response, that this Class Action Waiver is unconscionable, but they did not raise this argument in their complaint.  This raises the issue of whether Plaintiffs properly pled unconscionability.  The Second Amended Complaint does claim that an arbitration clause in a separate contract, the Enrollment Agreements (Doc. #21, Ex. 4), is unconscionable, but Sallie Mae is not a party to those Agreements.  This is

where Plaintiffs make their argument that the ComputerTraining Defendants' default is

imputed to Sallie Mae.

> The arbitration clause in the Enrollment Agreements reads:
>
> ARBITRATION OF DISPUTES: Any dispute, controversy or claim ("Claim") that in any way arises out of or relates to this Enrollment Agreement, or the breach thereof, shall be submitted to binding arbitration before the American Arbitration Association, pursuant to its Commercial Arbitration Rules.  The arbitration shall be conducted before a panel of three impartial arbitrators.  The place of arbitration shall be Baltimore, Maryland.  Any judgment on the award rendered by the arbitration panel may be entered in any court having jurisdiction thereof.
>
> A Claim may be brought by you only as an individual and on an individual basis.  No Claim may be brought by you as a class representative, nor may you participate as a member of a class of claimants with respect to any Claim.  THE RESULT OF THIS ARBITRATION PROVISION IS THAT NO CLAIMS MAY BE LITIGATED IN COURT, INCLUDING THOSE CLAIMS THAT, BUT FOR THIS ARBITRATION PROVISION, MIGHT HAVE BEEN TRIABLE BEFORE A JURY, AS CLASS ACTIONS, AS PRIVATE ATTORNEY GENERAL ACTIONS, OR OTHERWISE.  IN ADDITION, ANY CLAIMS MUST BE ARBITRATED THROUGH AN INDIVIDUAL ARBITRATION ONLY AND MAY NOT BE PART OF A CLASS ACTION ARIBITRATION.
>
> Notwithstanding anything in the foregoing to the contrary, the losing party shall pay the prevailing party's costs and reasonable attorney's fees incurred in connection or associated with the litigation of a Claim hereunder.  Students are advised to keep all documents regarding enrollment and financial obligations.

Doc. #21, Ex. 4 at 3 [capitalization and bold type in original; format altered for clarity].

In the Second Amended Complaint, Plaintiffs claim that the "Baltimore-only arbitration

clause is unconscionable and unenforceable," and that the class action waiver in the

Enrollment Agreement is also unconscionable and unenforceable. (Doc. #26, ¶¶ 109-

113).  Plaintiffs say that since the ComputerTraining Defendants failed to appear and

defend, they defaulted on all claims, including Plaintiffs' allegations of unconscionability, and the unconscionability argument is deemed true.

Plaintiffs contend that the effect of the FTC Holder Rule is that their allegation that the Class Action Waiver in the Promissory Notes is unconscionable, should also be deemed true.  In other words, Plaintiffs claim that the ComputerTraining Defendants' default on allegations of unconscionability, can be imputed to Sallie Mae through the FTC Holder Rule.  Plaintiffs contend that this is true despite the fact that Sallie Mae is not a party to the Enrollment Agreements.  Plaintiffs also contend that this is true despite the fact that the arbitration provisions at issue contain different terms, are in different contracts, and involve different parties.

The FTC Holder Rule requires that consumer credit contracts contain the following notice:

> **ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF.  RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

Doc. #33, Ex. A-2, §XIII [capitalization and bold type in original]; *see also* 16 C.F.R. § 433.2.

The Federal Trade Commission ("the FTC") enacted the FTC Holder Rule to address the situation in which a consumer purchase is made with credit from a third party, so "the obligation to pay for goods or services is not conditioned upon the seller's corresponding duty to keep his promises." 41 Fed.Reg. 20022 [*Guidelines of Trade Regulation Rule Concerning Preservation of Consumers' Claims and Defenses*] (1976). For example, if a consumer takes out a loan to buy a car and it turns out to be a lemon,

14

the consumer must still pay back the loan.  The FTC said that this requirement means the debtor would be "robbed of the only realistic leverage he possessed that might have forced the seller to provide satisfaction – his power to withhold payment." *Id.*  Thus, the FTC Holder Rule was specifically designed to "protect the consumer's right to assert against the creditor any legally sufficient claim or defense against the seller.  The creditor stands in the shoes of the seller." *Id.* at 20024.  The FTC Holder Rule was intended to transfer the cost of seller misconduct, which would normally fall on a buyer or debtor, to the creditor. *Id.*  The logic is that creditors are in a better position to assess the legitimacy of a seller, and to externalize the costs of seller misconduct.  *Id.*

### a.  Plaintiffs misinterpret the FTC Holder Rule

Plaintiff relies on *Lozada v. Dale Baker Oldsmobile, Inc.,* for their position that under the FTC Holder Rule, Sallie Mae stands in the shoes of the ComputerTraining Defendants in their default on unconscionability arguments. *See Lozada v. Dale Baker Oldsmobile, Inc.,* 91 F.Supp.2d 1087 (W.D. Mich. 2000); (Doc. #35 at 15).  As the Court has established, however, Utah law, not Michigan law, governs the Promissory Notes.

Even if Michigan law and *Lozada* applied, both the sellers and the assignee of the loan in that case were active parties to the suit. *Lozada*, 91 F.Supp. at 1087. The *Lozada* court simply held that the plaintiffs could use the FTC Holder Rule to bring affirmative claims against the assignee of their contracts for violations of the Truth in Lending Act (TILA) and various Michigan consumer protection laws, for damages less than recission. *Id.  Lozada* then held that the class action waiver was unconscionable for reasons unrelated to the FTC Holder Rule. *Id.*

15

Plaintiffs cite no authority to support their interpretation of the FTC Holder Rule. Plaintiffs fail to cite any authority suggesting that the FTC Holder Rule could put Sallie Mae in the shoes of the ComputerTraining Defendants, such that Sallie Mae defaulted on the unconscionability arguments Plaintiffs raised in the Second Amended Complaint against the ComputerTraining Defendants only.

### b. Plaintiffs failed to properly plead unconscionability

Plaintiffs failed to properly plead that the Class Action Waiver in the Promissory Notes is unconscionable; they did not raise the argument until their response to this motion. Even if they had raised the issue appropriately, class action waivers are expressly allowed in consumer credit agreements under Utah law. Utah Code Ann. § 70C-3-104 (1953) (stating that a consumer contract may include "a waiver by the debtor of the right to initiate or participate in a class action related to the closed-end consumer contract"). Even if Plaintiffs had raised the issue appropriately, and even if Michigan law and *Lozada* applied, Plaintiffs have not proved the criteria for finding procedural and substantive unconscionability as set out in *Lozada*. *Lozada*, 91 F.Supp. at 1100-1106. The Plaintiffs make a number of other arguments regarding unconscionability, all of which the Court either does not reach or finds that they lack merit.

### B. Scope of the Arbitration Agreement

#### 1. Arbitrability has been delegated to arbitration

Plaintiffs dispute the validity of the Arbitration Agreement in its entirety for a variety of reasons. However, Defendant argues that any dispute regarding the validity of the Arbitration Agreement must be determined in arbitration, not by this Court. The

16

Arbitration Agreement defines what a "Claim" is, that "either party may elect to arbitrate – and require the other party to arbitrate":

> "CLAIM" means any legal claims, dispute or controversy between you and me that arises from or relates in any way to this Note… This includes, without limitation, disputes concerning the validity, enforceability, arbitrability or scope of this Arbitration Agreement or this Note.

Doc. #33, Ex. A-2, § XVII, ¶ 4.

Sallie Mae cites the recent Supreme Court case *Rent-a-Center, West, Inc., v. Jackson*, which held that the only way arbitrability can be decided by a court when it has been delegated to arbitration, is if the delegation clause itself is specifically challenged. *Rent-A-Center, West, Inc., v. Jackson*, 130 S.Ct. 2772 (2010).

In *Rent-a-Center*, the plaintiff argued that his claim should not be submitted to arbitration, even on the issue of arbitrability, because the arbitration agreement was both substantively and procedurally unconscionable under state law. *Id.* The Supreme Court said that it "need not consider that claim because none of Jackson's substantive unconscionability challenges was specific to the delegation provision." *Id.* at 2780. They held that unless the plaintiff "challenged the delegation provision specifically, we must treat it as valid under §2 [of the Federal Arbitration Act], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 2779.

Plaintiffs have not challenged the validity of the delegation clause.  Thus, the determination of the "validity, enforceability, arbitrability or scope of this Arbitration Agreement," must be decided in arbitration. (Doc. #33, Ex. A-2, § XVII, ¶ 4).

### 2.  The unavailability of NAF does not preclude arbitration

17

Plaintiffs say this dispute cannot be submitted to arbitration because the forum selection clause cannot be enforced.  They claim that the forum selection clause is one of the "terms and conditions" that must be met before either party can enforce the Arbitration Agreement.  (Doc. #33, Ex. A-2, § XVII).  Plaintiffs argue that the forum selection clause cannot be enforced because the National Arbitration Forum ("NAF") is the selected forum, and NAF no longer arbitrates disputes of this nature. (Doc. #35 at 9).  NAF was recently involved in litigation, the result of which was a consent decree prohibiting it from arbitrating consumer disputes. (Doc. #35, Ex. 2).

The Arbitration Agreement in the Promissory Notes sets out a process by which the Administrator, or forum, is selected:

> 1The National Arbitration Forum will be the Administrator unless:
> (a) [Sallie Mae] or [Plaintiff] agree otherwise;
> (b) [Plaintiff] [is] the Claimant and [Plaintiff] initiate[s] an arbitration before the American Arbitration Association; or
> (c) [Plaintiff] assert[s] a Claim in court, [Sallie Mae] elect[s] to arbitrate the Claim and [Plaintiff] give[s] [Sallie Mae] written notice that [Plaintiff] [is] selecting the American Arbitration Association as Administrator within 20 days thereafter (or, if [Plaintiff] dispute[s] [Sallie Mae's] right to require arbitration of [Plaintiff's] Claim, [Plaintiff] select[s] the American Arbitration Association as Administrator within 20 days after that dispute is finally resolved).

Doc. #33, Ex. A-2, § XVII, ¶ 3 [format altered for clarity].

It is undisputed that only Plaintiffs would normally have the power to choose NAF; they have not done so.  It is also undisputed that NAF is not an available Administrator, and that none of the conditions have been fulfilled under which the American Arbitration Association ("AAA") would be selected.

Defendant Sallie Mae argues that the Arbitration Agreement can still be enforced and that the parties should arbitrate under AAA.  (Doc. #33 at 1-4).  Sallie Mae notes

18

that the Arbitration Agreement contains a severability clause to ensure that the impossibility of any of its terms or conditions does not endanger the validity of the rest of the Agreement.  The severability clause in the Arbitration Agreement says: "1[i]f any portion of this Arbitration Agreement cannot be enforced, the rest of the Arbitration Agreement will continue to apply." (Doc. #33, Ex. A-2, § XVII, ¶ 10 [Survival, Severability, Primacy]).  The Promissory Note contains another severability clause, outside of the Arbitration Agreement, in Section XIV:

> Severability: If any provision of this Note is held invalid or unenforceable, that provision shall be considered omitted from this Note without affecting the validity or enforceability of the remainder of this Note.

Doc. #33, Ex. A-2, §XIV [Additional Agreements], ¶ 5 [underlined type in original]. Defendant argues that the forum selection clause can simply be severed and the rest of the Arbitration Agreement will remain enforceable.

Sallie Mae contends that the definition of "Administrator" also demonstrates an overriding intent to arbitrate:

> "Administrator" means, as applicable, the American Arbitration Association… or the National Arbitration Forum… provided that the Administrator must not have in place a formal or informal policy that is inconsistent with and purports to override the terms of this Arbitration Agreement.

Doc. #33, Ex. A-2, § XVII, ¶ 3.

Sallie Mae argues that the consent decree has caused NAF to "have in place a formal or informal policy that is inconsistent with and purports to override the terms of this Arbitration Agreement." *Id.*  It also claims that this definition demonstrates that the selection of AAA or NAF is subordinate to the parties' overriding intent to arbitrate.

19

Plaintiffs contend that when a selected forum cannot arbitrate a claim, a court cannot enforce the arbitration agreement.  They rely largely on *Walker v. Ryan's Family Steakhouse* and *Roney & Company v. Goren*, both of which involve arbitration agreements that designated an exclusive forum. *See Walker v. Ryan's Family Steakhouse,* 400 F.3d 370 (6th Cir. 2005); *and Roney & Company v. Goren*, 875 F.2d 1218 (6th Cir. 1989).  Plaintiffs characterize *Walker* as "refusing to order plaintiffs to arbitration or rewrite the arbitration clause where the selected arbitrator could not give Plaintiffs an effective hearing." (Doc. #35 at 12).  In *Walker* the court refused to enforce the arbitration agreement for a number of reasons, including that there was only one forum indicated and it was clearly biased towards one of the parties. *See Walker*, 400 F.3d at 385-386.  Likewise, the arbitration agreement in *Rooney* named an exclusive forum, so the court held that the plaintiff waived her right to be heard in any other forum. *See Rooney*, F.2d at 1223.

Plaintiffs cite numerous other cases in which one or more specific fora were indicated, and courts refused to compel arbitration in a forum not indicated in the arbitration agreement, or the court refused to redraft the agreement. (Doc. #35 at 12-14).  Here, two forums are named, one of which is still available.  This Arbitration Agreement also contains a severability clause, making rewriting it unnecessary.

Plaintiff says too, that AAA would not be able to hear this dispute because of its current moratorium on debt collection arbitrations. (Doc. #35 at 13, fn. 11).  AAA instituted this moratorium to assess the adequacy of its current procedures in protecting the rights of consumers in debt collections initiated by creditors. *Arbitration or Arbitrary: The Misuse of Mandatory Arbitration to Collect Consumer Debts, Hearing Before the*

20

*Subcomm. on Domestic Policy of the H. Comm. on Oversight and Government Reform,*

11th Cong. (2009) (statement of Richard W. Naimark, Senior Vice President of AAA),

*available at* http://www.adr.org/si.asp?id=5770 (last visited Feb. 9, 2011).  For example,

one of the central problems AAA wants to remedy is that very few consumers appear or

participate in the arbitration process, which makes it difficult to protect their rights. *Id* at

5.

> According to AAA's website, the moratorium covers:
>
> Consumer debt collections programs or bulk filings and individual case filings in which the company is the filing party and the consumer has not agreed to arbitrate at the time of the dispute and the case involves a credit card bill or, the case involves a telecom bill or the case involves a consumer finance matter.
>
> The AAA will continue to administer all demands for arbitration filed by consumers against businesses, and all other types of consumer arbitrations.

*Notice on Consumer Debt Collection Arbitrations*, http://www.adr.org/sp.asp?id=36427
(last visited Feb. 9, 2011).

This case is not covered by the moratorium.  It does not involve a consumer debt

collection, telecom bill, or consumer finance matter.  Instead, this case constitutes a

claim which would be filed by consumers against a business, which AAA's website

explicitly says that it will hear. *Id.*  Plaintiffs can demand arbitration before AAA.

For these reasons, the Court finds that it would not be improper to compel

arbitration with AAA.

### C.  No statutory conflict

The third step in considering a motion to compel arbitration is applicable when

federal statutory claims are asserted. *Stout v. Byrider,* 228 F.3d 709, 714-715 (6th Cir.

2000).  The Court is to consider whether Congress intended those claims to be

nonarbitrable. *Id.*

Plaintiffs misleadingly argue that the Arbitration Agreement "would violate the FTC

Holder Rule and the Federal Trade Commission Act." (Doc. #35 at 18).  They fail to

explain how the Arbitration Agreement could violate the Federal Trade Commission Act

("the FTCA"), which is the statute creating the FTC and defining its powers. *See* 15

U.S.C. § 41 *et seq.*  No federal statutory claims are asserted here.  Plaintiffs assert

state contract law claims against Sallie Mae through the FTC Holder Rule.  (Doc. #26).

The FTC Holder Rule is a federal regulation promulgated by the Federal Trade

Commission, not a statute enacted by Congress. 16 C.F.R. § 433.2.  Thus the third task

in the *Stout* analysis is not implicated. *Stout,* 228 F.3d at 714-715.  Even if the FTC

Holder Rule could be considered a statute for these purposes, Plaintiff has not argued

or otherwise shown that the FTC intended claims brought via the FTC Holder Rule to be

nonarbitrable.

### D.  All claims against Sallie Mae should be submitted to arbitration

"[I]f the court concludes that some, but not all, of the claims in the action are

subject to arbitration, it must determine whether to stay the remainder of the

proceedings pending arbitration." *Stout,* 228 F.3d at 714-715.  Defendants note that

"(t)he weight of authority clearly supports dismissal of the case when all of the issues

raised in the district court must be submitted to arbitration." *Green v. Ameritech Corp.,*

200 F.3d 967, 973 (6th Cir. 2000) (citations omitted).

Neither party argues that the Plaintiffs' claims against the ComputerTraining

Defendants should be stayed pending the arbitration of the claims against Sallie Mae,

and the Court finds no reason to stay proceedings pending arbitration between Plaintiffs

and Sallie Mae, or to exclude any claims against Sallie Mae from arbitration.

## IV. CONCLUSION

Defendant Sallie Mae's Motion to Dismiss is **GRANTED**.

Plaintiffs may file any claims against Sallie Mae individually with the American

Arbitration Association.

**IT IS ORDERED**.

   /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  February 18, 2011

The undersigned certifies that a copy of this
document was served on the attorneys of record
by electronic means or U.S. Mail on February 18,
2011.

s/Linda Vertriest
Deputy Clerk